FRANK N. DARRAS #128904, Frank@DarrasLaw.com
LISSA A. MARTINEZ #206994, LMartinez@DarrasLaw.com
SUSAN B. GRABARSKY #203004, SGrabarsky@DarrasLaw.com
PHILLIP S. BATHER #273236, PBather@DarrasLaw.com
DARRASLAW
3257 East Guasti Road, Suite 300
Ontario, California 91761-1227
Telephone: (909) 390-3770
Facsimile: (909) 974-2121

Attorneys for Plaintiff
KAREN HUGO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KAREN HUGO,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>Defendant. | Case No:<br><br>COMPLAINT FOR BENEFITS UNDER AN EMPLOYEE WELFARE BENEFIT PLAN |
|---|---|

Plaintiff alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C. § 1132(a), (e), (f), and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Plaintiff is informed and believes and thereon alleges that The Vanguard Group, Inc. Long Term Disability Plan ("Plan") is an employee welfare benefit plan established and maintained by The Vanguard Group, Inc. to provide its employees and those of its subsidiaries and affiliates, including Plaintiff, Karen Hugo ("Plaintiff" and/or "Ms. Hugo"), with income protection in the event of a disability and is the Plan Administrator.

4. Plaintiff alleges upon information and belief that Defendant, LIFE INSURANCE COMPANY OF NORTH AMERICA ("LINA"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, authorized to transact and transacting the business of insurance in this state, and, the insurer and Claims Administrator for the Plan.

5. Plaintiff further alleges that venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) in that Defendant LINA, who fully insured the policy and who is ultimately liable if Plaintiff is found disabled, may be found in this district. Since on or about November 1, 1956, LINA has been registered as a corporation with the State of California, has extensive contacts within the state, employs California residents, conducts ongoing business within the state and therefore, may be found within the state.

6. At all relevant times Plaintiff was a resident and citizen of the United States, an employee of The Vanguard Group Inc., its successors, affiliates and/or subsidiaries, and a participant in the Plan.

7. Based upon information and belief, Plaintiff alleges that at all relevant times herein Plaintiff was covered under group disability policy number LK-980241 that had been issued by Defendant LINA to The Vanguard Group, Inc. to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff.

8. LINA both funds and decides whether claimants will receive benefits under the Plan and as such suffers from a structural conflict which requires additional skepticism.

9. Based upon information and belief, Plaintiff alleges that, according to the

terms of the Plans, if Plaintiff became disabled, LINA promised to pay long term disability benefits to Plaintiff as follows:

- Benefit Waiting Period: 180 days.
- Disability Benefit: The lesser of 66.67% of an Employee's monthly Covered Earnings rounded to the nearest dollar or the Maximum Disability Benefit.
- Minimum Disability Benefit: The greater of $100 or 10% of an Employee's Monthly Benefit prior to any reductions for Other Income Benefits.
- Maximum Benefit Period: Employee's SSNRA.
- Definition of Disability/Disabled:
  - The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
    - 1. unable to perform the material duties of his or her Regular Occupation; and
    - 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
  - After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
    - 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
    - 2. unable to earn 80% or more of his or her Indexed Earnings.

10. Prior to her disability under the terms of the Plan, on or about August 26, 2014, Plaintiff, who had been employed with The Vanguard Group, Inc., was working as Financial Administrator.

11. However, Plaintiff became disabled under the terms of the Plan and timely

1  submitted a claim to LINA for payment of disability benefits.

2    12.    LINA initially approved and paid Plaintiff's LTD benefits.

3    13.    However, on or about September 17, 2015, LINA unreasonably and unlawfully denied Plaintiff's claim. And, on or about June 20, 2016, LINA unreasonably and unlawfully upheld its denial of Plaintiff's claim.

14.    According to LINA's denial letters:

- **September 21, 2015**: "After completing our review of your claim, we are unable to continue paying benefits beyond September 17, 2015… You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."
- **June 20, 2016**: "After completing our review of the claim, we must uphold our prior decision to deny Ms. Hugo's claim…A second appeal request is not required but will be accepted if you have different or additional information to submit…You have the right to bring a legal action for benefits under the Employee Retirement Income Security Act of 1974 (ERISA) section 502(a) following an adverse benefit determination on appeal."

15.    In so doing, LINA unreasonably and unlawfully relied upon the opinions of physicians who were financially biased and/or not qualified to refute the findings of Plaintiff's board certified physicians; relied strictly upon physical requirements of occupation instead of taking into consideration the non-exertional requirements of Plaintiff's own, or any, occupation; and misrepresented the terms of the Policy.

16.    Additionally, LINA knew, or should have known, that the documentation submitted to and/or obtained by LINA clearly substantiated Plaintiff's disability, including, but not limited to, the following:

<u>January 2, 2015 Podiatrist Richard Cohen, DPM-APS</u>

| | |
|---|---|
| 1 | • Sitting: occasionally-supported by clinical findings. |
| 2 | • Standing/walking: pt is currently non weight bearing. |
| 3 | • Lifting: none. |

January 30, 2015 PM&R Larry Chou, M.D.-OVN

- At this juncture, I think it would be hard for her to return to work as she has to do a lot of sitting. She needs to have the opportunity lie down at least twice to 3 times an hour, which is very difficult In an office setting. As well, narcotic medications and the chronic pain in her right foot is certainly a tremendous distraction for her.

April 24, 2015 Podiatrist Robert Cohen, DPM-APS

- Sitting: occasionally.
- Standing/walking: nonweightbearing.
- Lifting: none.

May 19, 2015 Larry H. Chou, M.D. Physical Ability Assessment

- Right foot requires elevation throughout the day. Narcotic medications may cause decreased focus, attention, and cognitive blunting.

May 19, 2015 CAT Scan of the Right Lower Extremity

- IMPRESSION: 1. Only slight further healing of the fracture of the base of the second metatarsal as described below.
- 2. Further bony union across the fracture of the base of the fourth metacarpal.

June 8, 2015 PM&R and Interventional Pain Specialist Eric Lake D.O.-OVN

- Examination of the right foot: There is diffuse soft tissue swelling of the right lower extremity, extending to the mid tibia. The patient has purple discoloration of the right foot and toes of the left foot. Both feet are cold. She had tenderness over the entire dorsum of the right foot, most specifically over the second metatarsal.

<u>June 30, 2015 PM&R and Interventional Pain Specialist Jeffrey S. Berger, D.O. OVN</u>

- PHYSICAL EXAMINATION: She remains non-weight bearing on the right foot. She continues with two out of five strength in the right foot intrinsic.

<u>July 16, 2015 Sports Medicine Specialist Eric J. Lake, D.O. OVN</u>

- Musculoskeletal Lower Body There Is diffuse soft tissue swelling of the right lower extremity, extending to the ankle. The patient has erythema of the right foot, the right foot is cool to the touch. The patient was apprehensive at movement or palpation of the right foot. She had tenderness over the second and third metatarsals, primarily.

<u>August 18, 2015 X-ray of the right foot</u>

- Impression: fracture proximal right second metatarsal.

<u>September 22, 2015 X-ray of the right foot</u>

- Findings: displaced fracture the proximal second metatarsal bone. There is patchy demineralization.

<u>November 20, 2015 CT of Right Lower Extremity</u>

- Advanced osteopenia and/or osteoporosis as evidenced by multiple lucent areas of osseous resorption in all of the imaged bones of the foot, distal tibia and fibula.

<u>December 30, 2015 Robert Cohen, DPM-OVN</u>

- She appears to be in the later stages of complex regional pain syndrome and the likelihood of having a full recovery at this point with this condition is minimal.

<u>February 23, 2016 Robert Cohen, DPM-OVN</u>

- The patient did also present picture of her foot at the end of the day, which appeared to be grossly edematous and very

   erythematous. There is tenderness with range of motion at the right first metatarsophalangeal joint as well as significant tenderness at the second metatarsal base with palpitation. There is significant hypersensitivity with palpitation of the right foot. She has increased symptoms with straight leg raise and dorsiflexion of her right foot.

- At this time, the patient's ability to have gainful employment is limited even in a seated position as her continued neurologic pain and her constant need to get up and stretch and move the foot every 15 minutes is very distracting to her concentration. She has limited ability to do significant workload without symptoms.

<u>February 26, 2016 Robert Cohen, DPM -APS</u>

- Please confirm Ms. Hugo's sitting tolerance (total): 2-4 hours.
- Please confirm Ms. Hugo's walking tolerance (total): 0-2 hours.
- Please confirm Karen Hugo's current prescribed medications: Neurontin, Tramadol.
- Would Karen Hugo's medications and/or their side effects interfere with her ability to sustain fulltime work? Yes. Her medications cause drowsiness.
- Please confirm that it was your opinion that at no time between August 26, 2014 and present has Karen Hugo had the physical ability to return to fulltime work in any capacity. I agree with the above statement.
- Please confirm that it is still your opinion that Karen Hugo remains totally disabled from full time work in any occupation. I also agree with the above statement.

17. To date, even though Plaintiff has been disabled, LINA has not paid Plaintiff any disability benefits under the Policy since on or about September 17, 2015. The unlawful nature of LINA's denial decision is evidenced by, but not limited to, the

following:

- LINA engaged in procedural violations of its statutory obligations under ERISA, including, but not limited to: failing to timely advise Plaintiff of what specific documentation it needed from her to perfect her claim; and, failing to provide a complete copy of all documents, records, and other information relevant to her claim despite a request by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);
- LINA ignored the obvious, combed the record and took selective evidence out of context as a pretext to deny Plaintiff's claim; and,
- LINA ignored the opinions of Plaintiff's board certified treating physicians and/or misrepresented the opinions of Plaintiff's treating physicians. Deference should be given to the treating physicians' opinions as there are no specific, legitimate reasons for rejecting the treating physicians' opinions which are based on substantial evidence in the claim file. Further, LINA's highly conflicted physicians' opinions do not serve as substantial evidence, as they are not supported by evidence in the claim file, were not issued by physicians with the same level of medical expertise as the board certified treating physicians, nor are they consistent with the overall evidence in the claim file.

18. For all the reasons set forth above, the decision to deny disability insurance benefits was wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Further, LINA's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) and *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2342 (2008).

19. Additionally, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U.S., at 113 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B).

20. As a direct and proximate result of LINA's failure to provide Plaintiff with disability benefits, Plaintiff has been deprived of said disability benefits beginning on or about September 17, 2015 to the present date.

21. As a further direct and proximate result of the denial of benefits, Plaintiff has incurred attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1).

22. A controversy now exists between the parties as to whether Plaintiff is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan's definitions of disability and consequently he is entitled to all benefits from the Plan to which he might be entitled while receiving disability benefits which included, but are not limited to reimbursement of all expenses and premiums paid for such benefits from the termination of benefits to the present. In the alternative, Plaintiff seeks a remand for a determination of Plaintiff's claim consistent with the terms of the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid to Plaintiff beginning on or about September 17, 2015, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid; plus all other benefits from the Plans to which he might be entitled while receiving disability benefits which included

but are not limited to reimbursement of all expenses and premiums paid for such benefits or, in the alternative, a remand for a determination of Plaintiff's claim consistent with the terms of the Plans;

    2.    An order determining Plaintiff is entitled to future disability payments/benefits so long as he remains disabled as defined in the Plans;

    3.    For reasonable attorney fees incurred in this action; and,

    4.    For such other and further relief as the Court deems just and proper.

Dated: September 1, 2016

DarrasLaw

PHILLIP S. BATHER
Attorneys for Plaintiff